## A. B. WALKER v. WM. H. BRADEN, as *Sheriff* of Crawford County.

1. SHERIFF—*Action against Defaulting Bidder.* A sheriff may maintain an action in his official capacity to recover from a defaulting bidder at an execution sale, the amount of an accepted bid.

2. CONTRACT, *Arises from Accepted Bid.* In such a case the action is founded upon the contract arising from the bid and its acceptance, and not upon the judgment and execution upon which the sale was made, and therefore it is not necessary that the judgment and execution should be set out at length in the plaintiff's petition.

3. ACTION, *After Return of Execution.* Such action may be instituted and maintained by the sheriff when he has no execution in his hands, and after the execution under which the sale was made has been returned into court with his doings indorsed thereon.

4. SHERIFF, *Liable for Amount of Bid.* Where property is offered at an execution sale, and struck off to a bidder who refuses to pay the amount of his bid, and the sheriff, instead of rescinding the contract and reselling the property, treats the sale as consummated, and surrenders possession of the property to the purchaser, he thereby makes himself liable for the amount of the bid.

5. NOTICE—*No Complaint.* The purchaser at an execution sale cannot be heard to complain that the notice of such sale was defective.

6. ——— *Interest Sold.* Only the interest which an execution debtor has in the property is levied upon and sold, and the purchaser at such sale takes the property subject to any valid and subsisting lien which may exist against it; and the sheriff is not warranted in accepting from the purchaser less than the amount of the bid, or in crediting the purchaser upon the bid with any mortgage debt which he may claim against the property sold.

7. CASE-MADE—*Certificate*—*Evidence.* Where the certificate attached to a case-made recites "that the same contains sufficient of the evidence and proceedings to raise the points desired to be presented by the defendant," but fails to state the points raised, or those which the defendant desired to present for decision, the sufficiency of the evidence cannot be considered by this court.

*Error from Crawford District Court.*

ACTION by *Braden*, as sheriff of Crawford county, against *Walker*, to recover upon an accepted bid made by defendant for certain personal property which was offered and sold by the sheriff at an execution sale. Plaintiff's petition, after the court and title, is as follows:

"1st. The plaintiff alleges that at the time of the issuing of the executions hereinafter mentioned he was the sheriff of Crawford county, Kansas.

"2d. On the 22d day of February, 1884, three executions were duly issued out of the district court of Crawford county, Kansas, and to plaintiff as such sheriff directed and delivered, in three certain actions against Amon McFarland and Michael Moore as copartners under the firm-name and style of McFarland & Moore, whereby he was directed and commanded to execute and levy the said executions upon any personal property said McFarland and Moore had in Crawford county, Kansas, subject to execution; of which executions one was for the sum of $100.77, and costs taxed at $6.85, and one was for the sum of $262.45 judgment, and costs taxed at $6.85, and one for the sum of $212.65, and costs taxed at $6.85.

"Plaintiff further states, that said executions were issued out of said court upon three proper and lawful judgments of said court, which judgments were in full force and unsatisfied, and were for the full sums of the said executions.

"Plaintiff further avers, that, as sheriff and by virtue of the executions, he proceeded immediately after receiving them to the town of Cherokee, in the county of Crawford and state of

Kansas, where he found said McFarland & Moore in the possession of a mill building which was personal property, and that the title of said mill was then in said McFarland & Moore, and was the only property of said McFarland & Moore which this plaintiff could find after having made diligent search.

"Plaintiff further states, that he did in due time levy the executions upon said mill property, and after advertising said property for full ten days, proceeded, on the 7th day of March, 1884, to sell said property for cash in hand to the highest bidder at public auction under said executions, at one o'clock P. M. of said March 7th, 1884, which sale was made at Cherokee; and the defendant, A. B. Walker, then and there at said sale, and for said mill property, bid the sum of sixteen hundred dollars, his being the highest and best bid therefor; and this plaintiff, as such sheriff, then and there accepted said bid, and knocked said property off to said Walker, defendant herein, and then and there delivered said property to defendant, who accepted the same; but just as soon as he so received said property he then and there neglected to pay for the same, and in about one hour after said sale he refused, and still doth refuse, to pay for the same, although this plaintiff has repeatedly demanded the same. Wherefore, the plaintiff has been unable to pay off and satisfy said judgments and executions.

"By reason of the foregoing facts, the said plaintiff demands judgment against the said defendant for the said sum of sixteen hundred dollars, the amount of the aforesaid bid, with costs of suit."

On March 31, 1884, the defendant filed his answer, which contained in substance, first, a general denial; second, defendant says that the plaintiff did not sell the said property, (the grist mill in the city of Cherokee, known as the "Anchor Mill,") to this defendant according to law; that the mill property mentioned in plaintiff's petition as having been sold to this defendant, was not duly advertised for sale; that the plaintiff was not legally authorized to offer said property for sale, or to sell the same to this defendant; that plaintiff could not, under any legal proceedings which he had pursued, sell, convey or deliver to this defendant any title to the property aforesaid; that said pretended sale was made without legal advertisement on three executions jointly, and without separate advertisements, and that plaintiff wholly refuses to state upon

which of the three executions he made said sale; that said property is not personal property, but the same is real property as between the plaintiff and the defendant; but as between this defendant and McFarland and Moore it is personal property which they had mortgaged to defendant. Third, that said pretended sale was wholly void, because there was a previous arrangement by which said McFarland, the judgment debtor, entered into a secret agreement with other parties interested in the property not to bid thereon, and to cause the same to be sacrificed to the injury of this defendant, who had a mortgage on said property for $1,200 and interest, and in pursuance of said arrangement said property was not bid upon by him. Fourth, that the defendant is the owner and holder of two promissory notes made and delivered to him by the said McFarland and Moore on October 1, 1883; one thereof for $600, due in one year, and the other for $600, due in two years, both notes bearing interest from date at 12 per cent. per annum; that at the time of making said notes, and to secure the payment of the same, the said judgment debtors, McFarland and Moore, long prior to the rendition of the three judgments against them as stated in the plaintiff's petition, executed and delivered to this defendant their chattel mortgage upon the said mill property, which mortgage was duly recorded in the office of the register of deeds of Crawford county, Kansas, on October 8, 1883; that on October 1, 1883, this defendant was the owner of said mill property and in the peaceable possession thereof, and that he then sold and delivered the same to said McFarland and Moore for $1,700; that said purchasers paid defendant $500, and to secure the remainder of the purchase-money, executed the notes and chattel mortgage aforesaid, and further agreed to keep said property insured for the benefit of defendant; and defendant further avers that said McFarland and Moore have not kept their agreement to insure said mill property, and that they have broken the conditions of said mortgage, and that the whole sum secured thereby is due this defendant. And, fifth, that defendant did not bid $1,600 on said mill property at said sale, but that he did bid

thereon the difference between the sum aforesaid and the amount due him on the two notes aforesaid, to wit, the sum of $337.20, and that plaintiff so understood defendant's bid. The defendant prayed judgment in his favor for costs; and further, that if any judgment should be rendered against him, that it be only for said sum of $337.20. Copies of the aforesaid notes, chattel mortgage and insurance agreement were attached as exhibits to the answer, and made a part thereof.

The plaintiff's reply was a general denial. Trial at the September Term, 1884, and judgment for plaintiff for $1,600 and costs. The defendant brings the case here.

*Van Syckel & Wells,* for plaintiff in error.

*John T. Voss,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: This action was brought by Wm. H. Braden in his capacity as sheriff of Crawford county, upon an accepted bid made by A. B. Walker for certain personal property which was offered and sold by the sheriff at an execution sale. The sheriff recovered in the action, and the defendant Walker asks a review of the proceedings in the district court. The right of the sheriff to maintain the action is questioned. When a bid is made and accepted at such a sale, it becomes a contract between the bidder and the sheriff, and one which we think may be enforced by the sheriff. It is true that in a certain sense he is acting in the character of a trustee, and that the only direct interest which he has in the contract is the costs made by him in the levy and sale. He acts in behalf of the execution creditor and the execution debtor, or owner of the property, as well as any others who may be interested in the proceeds of the sale. While that is true, the law invests him with authority to sell, the contract of sale is made with him, and the contract price is to be paid to him, and when it is paid, he is accountable for its proper disposition. In such a case he may be regarded as the principal in making the contract, and therefore

1. Sheriff; action against defaulting bidder.

a proper party to maintain an action thereon. (*Adams v. Adams*, 4 Watts, 161; *Armstrong v. Vroman*, 11 Minn. 220; *Gaskell v. Morris*, 7 Watts & S. 32; *Glenn v. Black*, 31 Ga. 393; Rorer on Judicial Sales, p. 300, § 744.)

If we should treat the sheriff as other than the principal in the contract sued on, there would still seem to be sufficient authority in the sheriff to prosecute the action under that section of the statute which provides that "a person with whom, or in whose name, a contract is made for the benefit of another, or a person expressly authorized by statute, may bring an action without joining with him the person for whose benefit it is prosecuted." (Civil Code, § 28.) The bringing of an action in the name of an officer is in keeping with the theory and spirit of the code, as a multiplicity of suits is thereby avoided, and the rights of all concerned can be as fully protected as in separate actions; and so it has been said that "it would inevitably produce great confusion and clashing of suits to permit other persons beside the sheriff in their own names, to maintain suits against the sheriff's vendees for breaches of their contracts made with him. It would also be inconsistent with every principle of analogy in the law." (*Adams v. Adams*, supra.)

Error is assigned in the overruling of the objection to the introduction of any testimony under the plaintiff's petition. It is claimed that a cause of action was not stated, because the judgments and executions under which the sale was made were not set out at length in the petition. The objection is not good, as the foundation for the action is the contract arising from the offer to purchase by Walker, and its acceptance by the sheriff. That contract is fully set forth in the petition; and it is further alleged that the executions were issued upon proper and lawful judgments, which were in full force and unsatisfied, and were for the full sum mentioned in the executions. Under these allegations the judgments and processes preliminary to the sale under which the contract sued on arose, were admissible in evidence; and if for any reason a fuller or more detailed state-

2. Contract arises from accepted bid.

ment was desired or necessary, it should have been obtained by a motion made for that purpose.

Objection was made to the action of the court in permitting the plaintiff to file a reply to defendant's answer after the trial had commenced. The petition was filed on March 20, 1884, and an answer on March 31, 1884, and by consent the cause was tried at the succeeding term, beginning on April 1, 1884. The granting of permission to amend or to file a pleading out of time is largely within the discretion of the court — a discretion which we think was properly exercised in this instance.

It is next contended that the court erred in permitting the executions to be received in evidence, for the reason that by the return thereon it appeared that no liability had been incurred by the sheriff in making the sale, and that the executions having been returned not satisfied prior to the commencement of the action, they were *functus officio*, and could prove nothing for the sheriff. The return made by the sheriff showed fully the action taken by him. It showed the reception of the executions, the levy upon the property, the notice of the time and place of sale, and then recited that "at the time and place mentioned in said notice, I did offer and sell said described property to A. B. Walker, he being the highest bidder therefor, for the sum of $1,600, and afterward he refused to pay me the purchase-money; and the plaintiff and defendant both refusing to let me resell the said property, I return this execution not satisfied, this 15th day of March, 1884." The facts stated in the return correspond with the oral testimony of the sheriff, and are competent to show the contract upon which the action was brought. This return shows not only an unsatisfied execution, but it discloses an actual sale to the plaintiff in error, and also that the sheriff, instead of rescinding the contract and reselling the property, elected to make himself liable by returning a sale, trusting to a recovery against the purchaser. The testimony of the sheriff is, that immediately after the sale the possession of the property was delivered to the purchaser, and by the sale and delivery thus made, the sheriff undoubtedly

4. Sheriff liable
for amount
of bid.

made himself liable for the amount of the bid. (*McCluskey v. McNeely*, 8 Ill. 578; *Denton v. Livingston*, 9 Johns. 96; *Shaw v. Smith*, 9 Yerg. 97; Freeman on Executions, § 300.)

The return of the execution into court did not, as insisted by the plaintiff in error, defeat the right of action in the sheriff, nor do we think the presence of process in the hands of the sheriff essential to the maintenance of the action.

3. Action after return of execution. The execution had served its main purpose. Under it the property had been levied upon and sold, and with the action of the officer indorsed thereon, it had been returned into court. A recovery against a defaulting bidder could seldom be accomplished before the return-day of the execution under which the sale was made, and if after the return of the execution the money is collected or recovered from the purchaser, the sheriff may, upon leave obtained from the court, make a further return of that fact.

The further objection is made to the execution and to the right of the officer to maintain the action, that the proper statutory notice of the time and place of the sale was not given by the sheriff. The return upon the execution shows that the sale was advertised by posting five notices in five public places in the township in which the property was situated. This notice would have been sufficient for a sale under an execution issued by a justice of the peace. But while the judgments in this case were rendered by a justice of the peace, they had been transferred to and docketed in the district court, and the executions thereon had issued out of that court, and should have been executed in accordance with the provisions of § 451 of the civil code. That section requires that where a newspaper is published in the county the sale should be advertised therein. Objection to the notice given might have been made by defendants in the execution, and perhaps also by the execution creditors; but this right is one which they may waive. In this case, it appears from the record that the execution debtors and creditors not only made no complaint of the insufficient notice, but that they have approved of the sale as made; and as the plaintiff in

5. Notice of sale.

error, who was a stranger to the judgment and execution, received notice, participated in the sale, and purchased the property, he is certainly in no position to complain of insufficient notice.

It is strongly urged that the court·erred in overruling the demurrer to the plaintiff's evidence, and also in overruling the application for a new trial, based upon the ground that the decision was not sustained by sufficient evidence. Before we can examine the sufficiency of the evidence it must appear that all the testimony which was given in support of the point, finding, or judgment, which it is claimed was not sustained, is included in the record. The present case is brought here upon a case-made, and in it there is no statement that it contains all the testimony which was offered, nor all the testimony given in support of or relating to any single question presented in this court. The certificate of the judge shows that the testimony is not all here. Instead of certifying that it embraces all the evidence, he states· that "the same contains sufficient of the evidence and proceedings to raise the points desired to be

7. Case-made; certificate; evidence not considered.

presented by the defendant." This certificate is insufficient to permit an examination of the testimony. We are disposed to encourage a reduction of the record and the omission from the case-made of all mat-* ters not necessary to a review of the questions raised. If the questions raised, and which it was desired should be decided here, had been briefly and clearly stated, and the judge had certified that all, or substantially all, the testimony relating to those questions was contained in the case-made, it would be sufficient. But the points which the defendant desired to raise and present here are not stated in the record, and what they are is now a subject of conjecture and controversy. We cannot go outside of the case-made to settle such disputes, but must look alone to the record to find the questions reserved for review, as well as in determining the same. In the condition in which we find the record, therefore, many of the questions that are argued, and which arise only upon the evidence, are excluded from our consideration.

It is finally urged that the court erred in assessing so large an amount against the defendant. It appears that the property which was levied upon and sold had been mortgaged to Walker for about $1,200; but this mortgage had not been foreclosed, and at the time of the sale the property still remained in the possession of the mortgagors, who were the defendants in the execution. Notwithstanding his mortgage, Walker bid $1,600 for the property, which was accepted by the sheriff, and when payment was demanded Walker refused to pay more than the difference between his bid and the indebtedness secured by his mortgage; and he now claims that the judgment should not in any event have exceeded that difference. In this he is mistaken. Only the interest which the execution debtors had in the property was levied upon and sold, and the purchaser took the property subject to any valid and subsisting lien which existed against it. If Walker bid the full value of the property while holding a valid mortgage against it, he is unfortunate. It is claimed that he was misled by the sheriff, and thus caused to bid more than the difference between his claim and the actual value of the property. This is a question which can only be determined upon the evidence, and one which, in the condition of the record, we are not permitted to examine. But it is difficult to see how he could have been deceived, as the sale was made where the property was situated, and where it could be examined. He knew the amount of his lien thereon, and knew or will be held to know that only such interest as the defendants in the executions had in the property was being sold. Certainly the sheriff could not accept less than was bid at the sale, nor could the amount of the mortgage be allowed by the court as a set-off in this action. Whether the mortgage is valid, and what if anything is due thereon, has not yet been determined, and could not be determined in an action to which the mortgagors were not parties. The debt for which the property was sold is only $535.42, and if the mortgage of the plaintiff in error is valid and subsisting, he may by appropriate action reach the surplus fund derived from the sale of the property and have it applied

*6. Only interest of execution debtor sold.*

upon his debt, and thus be partially relieved from the effect of his blunder and the hardship of which he complains.

There are some other objections to the judgment, but they are not deemed of sufficient importance to require a notice here. Finding no error in the record, the judgment of the court below will be affirmed.

All the Justices concurring.