No. 23,925.

American Oil and Refining Company, *Appellee*, v. Liberty-Texas Oil Company et al. (Liberty-Texas Oil Company and Liberty Refining Company, *Appellants*).

SYLLABUS BY THE COURT.

1. Judgment by Default—*Insufficient Application to Set Aside Default Judgment.* A motion to set aside a default judgment on the ground that defendants' attorneys abandoned the cause and the defendants did not learn this fact until too late to employ other counsel, appeals to the sound discretion of the court, and *held*, on the facts stated in the opinion there was no abuse of the court's discretion.

2. Same—*Sufficiency of Showing.* Before defendant is entitled to have a default judgment set aside he must show that he has a meritorious defense to the action, in whole or in part, and the mere averment that he has such a defense, without setting forth the nature thereof or the facts relied upon, is insufficient.

3. REPLEVIN—*Redelivery Bond—Demand—Motion for New Trial.* In an action of replevin against two defendants they gave a redelivery bond and filed an answer consisting of a general denial. *Held,* that a judgment in plaintiff's favor will not be set aside and a new trial ordered on the ground that no evidence was offered showing a demand upon the defendants before the action was brought.

Appeal from Sedgwick district court, division No. 2; WILLIAM KEITH, judge *pro tem.* Opinion filed December 9, 1922. Affirmed.

*Robert C. Foulston, A. M. Ebright,* and *George Siefkin,* all of Wichita, for the appellants.

*R. L. Holmes, C. G. Yankey, W. E. Holmes,* and *D. W. Eaton,* all of Wichita, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The defendants appeal from an order overruling their motion for a new trial.

The plaintiff held a mortgage on personal property consisting of machinery and tools used in drilling oil wells. The action, which was begun October 20, 1920, was in replevin to recover the property, and alleged a special interest in the plaintiff as mortgagee. The defendants gave a redelivery bond and retained possession. The answer was a general denial. The case was not reached at the January, 1921, term, and was set down a second time for trial on April 7. At that time attorneys for defendants appeared in court, and at their request the case was passed and set down for April 11, when it was regularly called for trial. No one appeared for defendants. A jury was impanelled, plaintiff introduced its evidence and there was a verdict in its favor for $8,812.32, upon which the court rendered judgment. Within three days the defendants filed a motion for a new trial, alleging abuse of the court's discretion, misconduct of the plaintiff, accident and surprise which ordinary prudence could not have guarded against; and alleged that defendants had a good and valid defense to the action and would have presented it at the trial but were prevented by accident and surprise, in that their attorneys employed to represent them withdrew from the case and defendants did not discover this fact until a few hours before the case was called for trial.

Another ground stated in the motion was that the verdict was contrary to the evidence, as there was no proof of a demand prior to bringing the action.

Upon the hearing of the motion, affidavits of certain officers of the defendant companies were introduced, among them that of the treasurer of the Liberty Refining Company, to the effect that on April 12 he was in Tulsa, Okla., and received a long-distance telephone message from the field superintendent of the company, which was the first intimation he had of the intention of counsel to withdraw from the case; that he had frequently consulted with the attorneys; and that the company was not informed by their attorneys of their intention to withdraw, in time to employ other counsel. In this affidavit it was stated that defendant was at all times prepared to defend the action and had a complete, just, true and legal defense to the entire claim.

The affidavit of the secretary of the same company showed that on April 12 he received a telephone message from Thomas H. Lewis, whom he describes as "former president" of the Liberty-Texas Refining Company, in which Lewis said he was in receipt of a telegram from the attorney stating that he had withdrawn from the case. The secretary testified that he immediately wired the field superintendent instructing him to employ counsel and appear in court and represent the defendants, and that prior to the information he received he, personally, had never had any communication from the attorney to the effect that the case was to be called for trial, and that he was taken by complete surprise when he first learned of the withdrawal of the attorney.

It appears that new attorneys were employed who appeared in court a few hours after the judgment had been rendered.

The plaintiff presented the affidavits of its attorneys stating the history of the litigation and the various assignments of the case for trial, and the fact that it had been passed over at the request of defendants' attorneys from April 7 to April 11. The affidavits also set forth at length copies of correspondence had with the former attorneys for defendants requesting them to furnish an affidavit showing their excuse for their failure to appear. No affidavits were furnished by the former attorneys, but copies of their letters to the plaintiff's attorneys show that they had withdrawn from the case for the failure of the defendants to pay attorneys' fees, and that they had notified Thomas H. Lewis, president of the Liberty-Texas Refining Company of that fact before the case was actually tried, and had written him two months before April 11, threatening to withdraw unless their fees were paid.

The motion for a new trial appears to be based upon the provisions of section 305 of the code, and the ground relied upon falls within the claim of "accident or surprise which ordinary prudence could not have guarded against, or for any other cause whereby the party was not afforded a reasonable opportunity to present his evidence and be heard on the merits of the case."

Some abuse of discretion must appear in order to justify a reversal of the ruling. We think none is shown. This is especially true in view of the fact that defendants, while alleging that they had a just and meritorious defense to the action, failed to set forth any facts upon which their claimed defense is based. It devolved upon defendants not only to show they were within the provisions of the statute, that is, they were the victims of accident or surprise which ordinary prudence could not have guarded against, or for some other cause they were not "afforded a reasonable opportunity to present their evidence and be heard on the merits of the case," but they should show a meritorious defense. If there were no merits to the case; if the mortgage was valid, the debt due and unpaid, the plaintiff would be entitled to maintain the action to recover possession of the property because of his special interest. The mere statement in the motion and in the affidavits to the effect that the defendants had a good and valid defense to the action amounted to a mere conclusion of law. It gave the court no facts upon which to exercise discretion in determining whether defendants should have a new trial. The same rule that obtains where a separate action is brought to set aside a judgment by default applies here. In such cases it has been held that the court may properly overrule the motion, unless it appears not only that the default is excusable but that the defendants have a meritorious defense to the action.

In *McPherson v. Kingsbaker,* 22 Kan. 646, it was said:

"Now, before a party against whom a judgment is rendered by default can have that judgment set aside, and be let in to answer, the court must be advised of the defense which is to be presented, and assured by affidavit or other testimony, that such defense is at least believed to be true. Otherwise the defendant might delay and put the plaintiff to costs without any just defense to his claim. And the absence of counsel for defendant at the time of trial, or any other accident, might be productive of great benefit to defendant." (p. 648.)

In *Mulvaney v. Lovejoy,* 37 Kan. 305, which was a separate proceeding to vacate a judgment against a defendant on the ground that

his attorney had abandoned the cause without notifying him, and wholly neglected to appear and present his defense, it was said in the opinion:

"Judgments will not be set aside merely to allow a defendant to make a technical objection or an ineffectual defense. The provisions of the code under which this action 'is brought were enacted in furtherance of justice, and to relieve parties from unjust judgments that were obtained through no fault of their own. If the defendant has no valid defense, and the result of a second trial must be the same as the first, no actual injustice has been done, and it would be idle to disturb the judgment. The facts constituting the defense should be fully stated, and from them it must appear that the defendant has an existing legal and meritorious defense." (p. 308.)

In *State v. Soffietti*, 90 Kan. 742, 136 Pac. 260, an application for a new trial was presented after the term at which the judgment was entered. Following the Mulvaney case, it was held that the application was defective for not showing that the plaintiff had a valid and meritorious defense to the action.

(See, also, annotation, "Right to open default as affected by character of defense," L. R. A. 1916 F. 839, 861.)

The motion having been filed within three days after the rendering of the judgment, it is urged that any errors of law are available to the defendants; and in this connection it is claimed that the judgment should be set aside because there was no proof of a demand upon the Liberty Refining Company for the return of the property. The abstract shows that a demand was made on the Liberty-Texas Oil Company prior to the beginning of the action, and a refusal to surrender possession. The petition alleged possession by the defendants generally, without specifying that any particular part of the property was in the possession of either defendant alone. The plaintiff insists that the possession being joint, it required the consent of both defendants before either could make a delivery. However that may be, it has been held that a refusal to deliver possession by the giving of a redelivery bond, and contesting the action, amount to a waiver of a demand. In *Hutchings v. Cobble*, 30 Okla. 158, it was held under these circumstances a writ amounted to a demand, and defending of the suit was a refusal to deliver. Moreover, it has been held that the question of demand could affect nothing more than the question of costs. In *Beal v. Speer*, 106 Kan. 690, 189 Pac. 938, it was said: "The question of demand could in any event affect only the question of costs, for, of course, the property would not be

returned for want of it, and its omission could hardly be regarded as material here." (p. 692.)

The defendants saw fit to refuse to surrender the property and to give a redelivery bond; they filed an answer which denied the plaintiff's right to recover under the petition. It is apparent that a demand would have been useless. The subsequent conduct of the defendant shows that it would not have complied with the demand. Besides, there was evidence of a demand on one of the defendants.

The judgment is affirmed.